Justice Stevens,
with whom Justice Ginsburg joins, dissenting.
The Court holds that the plain terms of an injunction entered by the Bankruptcy Court as part of the 1986 reorganization of Johns-Manville Corporation (Manville) bar actions against Manville’s insurers for their own wrongdoing. I. disagree. In my view, the injunction bars only those claims against Manville’s insurers seeking to recover from the bankruptcy estate for Manville’s misconduct, not those claims seeking to recover against the insurers for their own misconduct. This interpretation respects the limits of the Bankruptcy Court’s power; it is consistent with the Court of Appeals’ understanding when it upheld the 1986 injunction on direct review and with Congress’ codification of the Man-ville bankruptcy approach for future asbestos proceedings in 11 U. S. C. § 524(g); and it makes sense of Travelers’ payment of $445 million in 2004 in exchange for a Bankruptcy Court order that supposedly “clarified” an unambiguous injunction.
Because the 1986 injunction has never meant what the Court today assumes, respondents’ challenge is not an impermissible collateral attack. The Court of Appeals correctly concluded that the Bankruptcy Court’s 2004 order improperly enjoined the state-law claims at issue in this proceeding.
I
At the heart of the dispute in this litigation is the distinction between two types of lawsuits seeking recovery from Manville’s primary insurer, The Travelers Indemnity Company, and its affiliates (together, Travelers). The first class, *157 which I shall call “insurer actions,” comprises suits in which the plaintiff is asserting that Travelers, as an insurer of Man-ville, has a duty to satisfy the plaintiff’s claim against Man-ville. Plaintiffs in that class include not only members of the public exposed to asbestos but also Manville factory workers and vendors of Manville products. The second class, which I shall call “independent actions,” comprises suits in which the plaintiff is asserting that Travelers is liable for its own misconduct. Plaintiffs in these suits have alleged both violations of state consumer-protection laws and breaches of common-law duties. See ante, at 142-143.
Suits that are called “direct actions” in the proceedings below and in the Court’s opinion may fall in either category, but as the Court acknowledges the “true” definition of that term describes only insurer actions. Ante, at 143, n. 2; see Black’s Law Dictionary 491 (8th ed. 2004). True direct actions are lawsuits in which a plaintiff claims that she was injured by Manville and seeks recovery directly from its insurer without first obtaining a judgment against Manville. The global settlement that made the 1986 reorganization of Manville possible clearly encompassed all such direct actions; Manville’s insurers paid $770 million, including $80 million from Travelers, into the Manville Personal Injury Settlement Trust (Manville Trust) to which these actions would be channeled. But many of the claims that gave rise to the instant litigation allege no breach of duty by Manville and seek no recovery from the Manville Trust. See ante, at 143, n. 2. They are claims against Travelers based on its own alleged violations of state statutes and common-law rules. Thus, even though the Court calls these claims “direct actions,” they are nothing of the sort. They are independent actions.
Some of the independent actions are based on facts concerning Travelers’ insurance relationship with Manville. A number of suits, for example, allege that Travelers acquired *158 information about asbestos-related hazards from Manville that it had a duty to disclose to third parties.[1] This sort of factual nexus does not, however, transform an independent action into an insurer action. Instead, the question remains whether a suit seeks to recover from Travelers for Manville’s wrongdoing or instead seeks to recover from Travelers for its own wrongdoing, making no claim on Manville’s insurance policy proceeds or other assets of the Manville bankruptcy estate.
Recognizing the distinction between insurer actions and independent actions, the Court of Appeals held that the Bankruptcy Court had improperly enjoined the latter in its 2004 order.[2] Without ruling on the extent of the Bankruptcy Court’s power, see ante, at 155, the Court today concludes that the 1986 injunction unambiguously barred independent actions and that the Bankruptcy Court’s 2004 order simply clarified, and did not enlarge, the scope of that injunction. Based on that premise, the Court holds that respondents are challenging the Bankruptcy Court’s authority to have issued the injunction in 1986, and it deems the challenge an impermissible collateral attack. I disagree with both the Court’s understanding of the 1986 injunction and its attendant res judicata analysis.
II
The 1986 order of the Bankruptcy Court approving the insurance settlement agreements (Insurance Settlement Order), which was incorporated by reference in the order *159 confirming Manville’s plan of reorganization, includes three related protections for Manville’s insurers, each focused on the company’s insurance policies. It releases the insurers from all “Policy Claims,” channels these claims to the Man-ville Trust, and permanently enjoins all persons from commencing or continuing a proceeding for “Policy Claims” against a settling insurer. App. to Pet. for Cert. in No. 08-295, pp. 445a-446a. The Insurance Settlement Order defines “Policy Claims” as:
“any and all claims, demands, allegations, duties, liabilities and obligations (whether or not presently known) which have been, or could have been, or might be, asserted by any Person against any or all members of the [Manville] Group or against any or all members of the Settling Insurer Group based upon, arising out of or relating to any or all of the Policies." Id., at 439a (emphasis added).[3]
Focusing on the italicized phrase, and particularly the term “relating to,” the Court declares that this language “is not even remotely amenable” to a construction that excludes independent actions and “clearly reaches factual assertions that relate in a more comprehensive way to Travelers’ dealings with Manville.” Ante, at 148-149. Thus, it concludes that “the plain terms of [the] court order unambiguously” bar independent actions. Ante, at 150.
*160 The Court doth protest too much. Indeed, despite its insistence that the definition of “Policy Claims” is unambiguous, the Court quickly concludes that it cannot apply the “based upon, arising out of or relating to” language literally because there is a “cutoff at some point, where the connection between the insurer’s action complained of and the insurance coverage would be thin to the point of absurd.” Ante, at 149. Presumably, for instance, the Court would not deem enjoined a state-law claim for personal injuries caused by a Travelers’ agent’s reckless driving while en route to the courthouse to defend Manville even though, in a literal sense, this suit relates to (perhaps even arises out of) Travelers’ performance of its policy obligations to Manville. The Court determines that it need not “stake out the ultimate bounds of the injunction” because it can rely on the Bankruptcy Court’s “uncontested factual findings” that the particular independent actions at issue fall within the category that it had intended to enjoin. Ibid.
If the definition of the term “Policy Claims” is not amenable to a purely literal construction and the Court must look beyond the four corners of the Insurance Settlement Order to ascertain its meaning, however, the Bankruptcy Court’s factual findings in 2004 are not the best guide. I would instead construe the order with reference to the limits of the Bankruptcy Court’s authority — limits that were well understood by the insurers during the original settlement negotiations — and with reference to the Court of Appeals’ interpretation of the Insurance Settlement Order when it upheld it against a jurisdictional challenge in 1988.
We should not lightly assume that the Bankruptcy Court entered an order that exceeded its authority. When a bankruptcy proceeding is commenced, the bankruptcy court acquires control of the debtor’s assets and the power to discharge its debts. A bankruptcy court has no authority, however, to adjudicate, settle, or enjoin claims against non- *161 debtors that do not affect the debtor’s estate. Because Travelers’ insurance policies were a significant asset of the Manville bankruptcy estate, the Bankruptcy Court had the power to channel claims to the insurance proceeds to the Manville Trust. But this by no means gave it the power to enjoin claims against nondebtors like Travelers that had no impact on the bankruptcy estate. Thus, even accepting the Bankruptcy Court’s representation in 2004 that it had “meant to provide the broadest protection possible” to the settling insurers, App. to Pet. for Cert, in No. 08-295, at 172a, such relief could not include protection from independent actions.
That the Bankruptcy Court was without authority to enjoin independent actions was well understood by both Man-ville and Travelers during their settlement negotiations. In Manville’s memorandum in support of the Insurance Settlement Order, it clarified that it did “not seek to have [the Bankruptcy] Court release its Settling Insurers from any claims by third parties based on the Insurer’s own tortious misconduct towards the third party” but rather sought only to release the insurers “from the rights Manville might itself have against them or rights derivative of Manville’s rights under the policies being compromised and settled.” App. for Respondent Chubb Indemnity Insurance Co. 5a. This understanding reflected not only the basic fact that the settlement was between Manville and its insurers (and not third parties), but also the parties’ knowledge that the “Second Circuit [had held] that the bankruptcy courts lack power to discharge 'independent’ claims of third parties against non-debtors.” Id., at 5a-6a.
Travelers similarly acknowledged the limits of the Bankruptcy Court’s power. Noting that “[t]he court has in rem jurisdiction over the Policies and thus the power to enter appropriate orders to protect that jurisdiction,” it stated that “the injunction is intended only to restrain claims against the res {%. e., the Policies) which are or may be as *162 serted, against the Settling Insurers.” Id., at 13a-14a;[4] see also id., at 10a (memorandum of the legal representative of the Bankruptcy Court noting that “[a]ll parties seem to agree that any injunction, channeling order and release is limited to this Court’s jurisdiction over the res”). In short, it was apparent to the settling parties, and no doubt also to the Bankruptcy Court, that the court lacked the power to enjoin third-party claims against nondebtors that did not affect the debtor’s estate.
When the Court of Appeals upheld the injunction barring the assertion of “Policy Claims” against Manville’s insurers it, too, understood these limits of the Bankruptcy Court’s authority. MacArthur Corporation, a Manville asbestos distributor, claimed to be a coinsured under Manville’s insurance policies by virtue of “vendor endorsements” in those policies entitling distributors to insurance coverage for claims arising from their sale of Manville products. MacArthur argued that the Bankruptcy Court lacked authority to issue the Insurance Settlement Order, which prevented it from suing the insurers, because this order constituted a de facto discharge in bankruptcy of nondebtor parties not entitled to Chapter 11 protection. In rejecting MacArthur’s argument, the Court of Appeals did not hold that the Bankruptcy Court possessed the authority to enjoin all actions against the insurers bearing some factual connection to Man-ville. Rather, it held that MacArthur had misconstrued the scope of the Bankruptcy Court’s order, which precluded “only those suits against the settling insurers that arise out of or relate to Manville’s insurance policies.” MacArthur Co. v. Johns-Manville Corp., 837 F. 2d 89, 91 (CA2 1988).
The Court of Appeals reasoned that this language enjoined MacArthur’s claims because “MacArthur’s rights as an in *163 sured vendor are completely derivative of Manville’s rights as the primary insured.” Id., at 92. Just as asbestos victims were “barred from asserting direct actions against the insurers,” so too was MacArthur barred because “in both instances, third parties seek to collect out of the proceeds of Manville’s insurance policies on the basis of Manville’s conduct.” Id., at 92-93 (emphasis added). The Court of Appeals further held that, because Manville’s policies were property of the bankruptcy estate, the Bankruptcy Court had “properly issued the orders pursuant to its equitable and statutory powers to dispose of the debtor’s property free and clear of third-party interests and to channel those interests to the proceeds thereby created.” Id., at 91.
As the Court of Appeals recognized in the instant proceedings, its earlier interpretation of the Insurance Settlement Order in MacArthur did not and does not extend to the independent actions at issue in the instant suit: “Travelers candidly admits that both the statutory and common law claims seek damages from Travelers that are unrelated to the policy proceeds, quite unlike the claims in MacArthur . . . where plaintiffs sought indemnification or compensation for the tortious wrongs of Manville to be paid out of the proceeds of Manville’s insurance policies.” In re Johns-Manville Corp., 517 F. 3d 52, 63 (CA2 2008). Also in contrast to MacArthur, “the claims at issue here do not seek to collect on the basis of Manville’s conduct.... Instead, the Plaintiffs seek to recover directly from Travelers, a non-debtor insurer, for its own alleged misconduct.” Ibid.
The Court of Appeals’ interpretation of the 1986 Insurance Settlement Order as enjoining only insurer actions and not independent actions is further supported by a statutory provision patterned after the Manville settlement. In the Bankruptcy Reform Act of 1994, Congress adopted 11 U. S. C. § 524(g) to expressly authorize the approach of the Manville bankruptcy in future asbestos-related bankruptcies. In granting bankruptcy courts the power to provide in june *164 tive relief to nondebtors, Congress stated that courts may-bar an action directed against a third party who “is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability of such third party arises by reason of... the third party’s provision of insurance to the debtor or a related party.” § 524(g)(4)(A)(ii) (emphasis added). As the italicized language makes clear, the statute permits a bankruptcy court to enjoin actions seeking to proceed against a non-debtor insurer for a debtor’s wrongdoing, but it does not confer power to enjoin independent actions arising out of the insurer’s own wrongdoing. See generally In re Combustion Engineering, Inc., 391 F. 3d 190, 235, n. 47 (CA3 2004) (explaining that § 524(g), like the Manville injunction, is limited to insurer actions). Had Congress interpreted “Policy Claims” in the manner the Court does today, and had it sought to codify that definition, it would have used broader language.
Finally, it is worth asking why Travelers paid more than $400 million in 2004 to three new settlement funds in exchange for the Bankruptcy Court’s order “clarifying” that the independent actions “are — and always have been — permanently barred” by the 1986 injunction. App. to Pet. for Cert. in No. 08-295, at 170a. If the 1986 injunction were as clear as the Court assumes, surely Travelers would not have paid $445 million — more than five times the amount of its initial contribution to the Manville Trust — to obtain a redundant piece of paper.
In sum, I believe the 1986 Insurance Settlement Order did not enjoin independent actions of the sort giving rise to these proceedings. A contrary conclusion ignores the limits of the Bankruptcy Court’s authority, the Court of Appeals’ interpretation of the order upheld on direct review in 1988, Congress’ approval of the Manville reorganization, and Travelers’ own conduct during both the 1986 and 2004 settlement negotiations.
*165 III
The Court’s holding that respondents’ challenge is an impermissible collateral attack is predicated on its determination that the 1986 Insurance Settlement Order plainly enjoined their independent actions. See ante, at 149-151. Because I disagree with this premise, I also disagree with the Court’s preclusion analysis. In challenging the Bankruptcy Court’s 2004 order “clarifying” the scope of the Insurance Settlement Order, respondents were in fact timely appealing an order that rewrote the scope of the 1986 injunctions. Their objection could not have been raised on direct appeal of the 1986 order because it was not an objection to anything in that order. And, of course, the Court of Appeals did not rule on a challenge to the enjoining of independent actions during direct review, as the Court acknowledges. See ante, at 152, n. 5. To the contrary, it interpreted the 1986 order as reaching only insurer actions. Thus, there neither was nor reasonably could have been a prior challenge that the 1986 order impermissibly enjoined independent actions.
Because the Court regards respondents’ challenge as a collateral attack, it brushes aside their jurisdictional objection to the Bankruptcy Court’s 2004 order on the ground that “the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders. ” Ante, at 151. But neither respondents nor the Court of Appeals contested that point. Rather, respondents argued that the Bankruptcy Court was not merely interpreting and enforcing its prior orders and that it had no jurisdiction to enjoin the independent actions when it approved the 2004 settlements. The Court of Appeals accordingly examined whether the 2004 order improperly expanded the scope of the 1986 injunction and concluded that it did, thereby enjoining claims that were beyond the Bankruptcy Court’s power to enjoin.
In my view, the judgment of the Court of Appeals was correct. The 1986 Insurance Settlement Order did not bar *166 independent actions, and the Bankruptcy Court lacked any basis for enjoining those actions in 2004. The independent actions have no effect on the bankruptcy estate, and “bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.” Celotex Corp. v. Edwards, 514 U. S. 300, 309, n. 6 (1995). The Court of Appeals thus correctly concluded that the Bankruptcy Court had impermissibly enjoined “claims against Travelers that were predicated, as a matter of state law, on Travelers’ own alleged misconduct and were unrelated to Manville’s insurance policy proceeds and the res of the Manville estate.” 517 F. 3d, at 68.
IV
Because I am persuaded that the 1986 Insurance Settlement Order did not encompass independent actions and that the Bankruptcy Court improperly enjoined such actions in 2004, I respectfully dissent.

 The theories asserted in many of the state-law actions are novel, and, as the Court of Appeals noted, these claims “have met with almost universal failure in the state courts.” In re Johns-Manville Corp., 517 F. 3d 52, 68 (CA2 2008).

 The Court of Appeals noted that the Bankruptcy Court had not considered whether the various actions at issue were properly classified as insurer actions or independent actions, and it remanded for the Bankruptcy Court to undertake this assessment.

 As the Court notes, the order confirming Manville’s reorganization plan contains an additional injunction barring claims against the settling insurance companies. Ante, at 142, n. 1. The language in that order enjoins only insurer actions. See App. to Pet. for Cert. in No. 08-295, pp. 286a-288a (enjoining actions against settling insurance companies seeking, directly or indirectly, to recover on or with respect to a “Claim, Interest or Other Asbestos Obligation”); id., at 56a, n. 6 (defining “Other Asbestos Obligation” as an obligation arising directly or indirectly from acts or omissions of a debtor). The parties accordingly focus on whether the Insurance Settlement Order enjoins independent actions.

 This statement of Travelers’ intent belies the Bankruptcy Court’s suggestion that enjoining independent actions was a necessary condition of Travelers’ contribution to the Manville estate. See App. to Pet. for Cert. in No. 08-295, at 170a-173a.